UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ACCESS 4 ALL, INC., a Florida not for
Profit corporation, and FELIX ESPOSITO,
Individually,

                         Plaintiffs,

    - against -

GRANDVIEW HOTEL LIMITED
PARTNERSHIP, an Ohio Limited
Partnership

                        Defendant,
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM, OPINION and ORDER**

CV 04-4368 (TCP) (MLO)

PLATT, District Judge

        Before the Court is a Report and Recommendation ("the Report") of U.S. Magistrate Judge Michael L. Orenstein dated December 16, 2005, which determined that attorneys' fees, costs and litigation expenses were warranted in the above matter and awarded such fees to Plaintiffs Access 4 All ("Access") and Felix Esposito ("Esposito") (collectively "Plaintiffs") pursuant to Title III of the Americans with Disabilities Act ("ADA"). Defendant Grandview Hotel Limited Partnership ("Grandview") or ("Defendant") objected to this report, arguing *inter alia* that (i) Defendant did not waive its right to contest standing, (ii) Plaintiffs did not have standing to bring the action, (iii) Plaintiffs are not the prevailing party, and (iv) should the Court choose to award fees, this amount should be reduced because this was a "formulaic" case. Plaintiffs also submitted an objection to report. For the following reasons (i) Plaintiffs' objections are **DENIED**, (ii)

1

Defendant's objections are **DENIED** in part and **GRANTED** in part, and (iii) the Report is **AFFIRMED** in part and **REVERSED** in part.

## BACKGROUND

The background and history of this action are fully recorded in the Report and will not be repeated in great detail herein. In October 2004, Plaintiffs commenced this action against Defendant seeking injunctive relief and attorneys' fees for alleged violations of Title III of the ADA, 42 U.S.C. §§ 12181 *et seq.*, on the grounds that architectural barriers existed at the Defendant's hotel (the "Property") which prevented disabled persons from equally using and enjoying the goods and services offered at the premises. (Compl. ¶¶ 18-19.)

On or about April 13, 2005 (six months later) the parties signed a Consent Decree which stated in pertinent part:

> When all issues are resolved between the parties, the parties hereby agree and will request the Court to enter a Final Order of Dismissal with Prejudice as to all claims, providing for retention of jurisdiction by the Court to enforce, as necessary, the terms of this Consent Decree. If, however, there remains a dispute as to the amount of attorney's [sic] fees, costs, and expert witness fees to be awarded by the court, then this Consent Decree is expressly contingent upon the Court's approval and consent of the terms and conditions hereof.

((Def.'s objections to the Report and Recommendation ("Def.'s objections"), Exhibit E ¶ 8.)

In paragraph five (5) of the Consent Decree, the parties specifically stated that "Plaintiff [sic] asserts a claim to attorneys' fees, experts'

2

fees and costs and defendant contests such claim."

On May 3, 2005 this Court issued an Order Approving the Consent Decree (the "Consent Order") which denied any pending motions as moot and left the case closed, "except for the determination of entitlement to, and the amount of attorneys' and expert's fees, litigation expenses and costs to be awarded to Plaintiffs' counsels and expert." (Consent Order ¶ 3.)

On May 31, 2005, Plaintiffs moved for an award of attorneys' fees. On December 16, 2005, Judge Orenstein concluded *inter alia* that (i) the Plaintiffs had achieved prevailing party status, (ii) Defendant had waived its right to contest standing, and (iii) the reasonable hourly rate for the three attorneys based on the prevailing practices in the Eastern District of New York was $250 per hour for Plaintiffs' Attorneys Lawrence and John Fuller of Fuller, Fuller & Associates, P.A. (or "the law firm"), and $140 per hour for Attorney Mario Mikelich, local counsel on the case. (Report at 8-14.)

On December 30, 2005, Defendant submitted its objections to the Report. Included in these objections was a list of sixty-one (61) actions in which Access or Esposito sued hotels for identical relief in New York, Massachusetts, New Jersey, and Washington D.C. (Def.'s objections at 7.) Plaintiffs' main counsel in this case, Fuller, Fuller & Associates was the attorney in all such actions in the Eastern District, and presumably in many other cases. The Magistrate Judge was unaware of Plaintiffs' history of duplicitous lawsuits when he made his Report and Recommendation.

On January 3, 2006, Plaintiffs filed an objection to the Report, arguing that the hourly rate for their three attorneys was unreasonably low. (Pls.' objections to the Report and Recommendation at 1.)

**DISCUSSION**

**I. Standard of Review**

This question of whether Plaintiffs are entitled to attorneys' fees in this matter is dispositive and thus subject to de novo review pursuant to Federal Rule of Civil Procedure 72(b).

**II. Standing**

Defendant argues that Plaintiffs are not entitled to attorneys' fees because they did not have standing to bring this suit. The Report found that the Defendant waived its right to contest standing because the terms of the Consent Decree resolved the issues concerning the alleged violations of the ADA. (Report at 6-8.) This Court agrees with this conclusion.

The Report quoted the Supreme Court's decision in *United States v. Armour & Co.*, 402 U.S. 673 (1971), which held that parties waive their rights to litigate issues when they enter into a Consent Decree.

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. *The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation.* Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of

> risk, the parties each give up something they might have won had they proceeded with the litigation.

*Id.* at 681 (emphasis added).

Defendant attempts to distinguish *Armour* by arguing that the Consent Decree in that case waived the litigants' right to challenge standing, while the Consent Decree here contains express reservations of Defendant's right to challenge (i) the Complaint's allegations, and (ii) Plaintiffs' entitlement to legal fees. Defendant argues that such reservations imply a right to challenge standing. (Def.'s objections at 3)  However, there is no "express reservation" of a right to challenge the Complaint's allegations; the Consent Decree merely states in an introductory clause that Defendant does not admit the allegations of Plaintiffs' Complaint. (Def.'s objections, Ex. E at 1.)  Defendant's interpretation would allow it to challenge all of Plaintiffs' claims, thereby violating the Consent Order, which closed the case but for certain issues.  Additionally, while Defendant is correct that the Consent Decree gives it the authority to challenge the Plaintiffs' entitlement to and amount of attorneys' fees, such authority does not imply that Defendant's have the right to contest standing.  Indeed, nothing in the Consent Decree explicitly reserves to Defendant this right.  If the parties had intended to make such a reservation, it should have been included in the document.

Moreover, by signing the Consent Decree, the Defendant implicitly waived its standing claim.  A Court can only enter a Consent Decree if it has jurisdiction over the parties and the Court only has jurisdiction if the parties have standing.  By signing the Decree and allowing the Court to enter it, the

Defendant in essence conceded to the Court's jurisdiction and thereby the Plaintiffs' standing.

Further support for this Court's determination that Defendant waived his right to challenge standing comes from the Consent Order approving the Consent Decree, which stated "[a]ny pending motions are hereby DENIED and this case is left closed, except for the determination of entitlement to, and the amount of attorneys' and expert's fees, litigation expenses and costs to be awarded to Plaintiff's [sic] counsels and expert." (Consent Order ¶ 3.) Thus, the Consent Order did not explicitly leave open the issue of standing.

Grandview argues that if the Plaintiffs' position were adopted, many defendants in Title III cases would be forced to litigate meritless cases for fear that settlement would cost them significant awards of fees and costs. The Court is cognizant of this issue but is also confident that federal courts will limit or deny attorneys' fees and costs when a case lacks merit. Indeed, the Court is prepared to do so here. *See infra* pt. III.

**II. Prevailing Party Status**

The ADA permits courts to award attorneys' fees to the "prevailing party." 42 U.S.C. § 12205. The Second Circuit, citing the Supreme Court, has held that "in order to be considered a 'prevailing party' . . . , a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties', but that change must also be judicially sanctioned." *Roberson v.*

*Giuliani*, 346 F.3d 75, 79-80 (2d Cir. 2003) (citing *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Helath & Human Resources*, 532 U.S. 598, 600 (2001). The Report correctly conferred "prevailing party" status on the Plaintiffs because the Consent Decree was judicially sanctioned in the Consent Order and because the Decree required a number of substantial modifications to the Property that were not suggested in Defendant's expert report. (Report at 5.)

Defendant essentially argues that Plaintiffs were not the prevailing party because (i) their sole motivation for making changes to the Property was to minimize litigation costs, and (ii) the changes were not material. (Def.'s objections at 11.) In regard to the first point, Defendant adds an inquiry into the Plaintiffs' motivation that neither the Second Circuit nor the Supreme Court required in *Robinson* or *Buckhannon* respectively. Thus, we see no reason to follow such a requirement here.[1] In reference to the second point, this Court agrees with the Report's finding that the Consent Decree required material changes to the Property that Defendant would not have otherwise corrected, such as the correction of several barriers to access. (Report at 5.) Accordingly, Defendant's arguments fail and Plaintiffs are entitled to prevailing party status.

### III. The Amount of Fees to be Awarded

As noted above, this Court became aware of information that the

---

[1] To the extent the case cited in Defendant's brief, *Union of Needletrades, Indus. & Textile Employees*, *AFL-CIO, CLC v. United States Immigration & Naturalization Servs.*, 202 F. Supp. 2d 265, 280 (S.D.N.Y. 2002), concludes that district courts must consider a parties' motivations for settlement, this Court declines to follow it.

Magistrate was not privy to - that Esposito and Access (and apparently their attorneys, Fuller, Fuller & Associates) have pursued dozens of Title III actions against various hotels in federal courts throughout New York, New Jersey, Massachusetts, and D.C. (Def.'s objections at 7.) These cases involve identical legal issues and similar factual issues. The duplicitous nature of the litigation warrants a reduction in the law firm's fee award.

In *Brother*, plaintiff's counsel filed numerous Title III actions against various properties throughout Florida. 341 F. Supp. 2d at 1234. The Court stated that "if [plaintiff's counsel] is as good as he says he is, he should have been able to litigate this unexceptional case by utilizing the formulaic approach that served him so well in all the similar cases he handled[.]" *Id.* at 1236-37. The Court then cut plaintiff's attorneys' billable hours, noting that counsel had filed a "cookie-cutter complaint virtually identical" to other cases his firm had filed, and that counsel had spent an unnecessary amount of time drafting letters to his client, who was a plaintiff in at least fifty other lawsuits involving identical issues. *Id.*

Fuller, Fuller & Associates have engaged in similar conduct. The Complaint in this case contains the same boilerplate language as Complaints the firm filed in *Access 4 All v. Field Family Assocs., LLC* 1:04-cv-02613 and *Access 4 All v. LaGuardia Associates*, 1:05-cv-2051. Also, like plaintiff's counsel in *Brother*, Fuller, Fuller & Associates allegedly spent upwards of twenty hours communicating with its client, Felix Esposito - the same individual who served

the firm as Plaintiff in at least fifteen (15) virtually identical Title III lawsuits.[2] (Def.'s objections at 7.) It is baffling to this Court why Plaintiffs' counsel would require so much time to communicate with Esposito on this particular case.

When confronted with such a situation, a Court may choose to (i) cut the number of hours billed, (ii) reduce the amount of the fee, or (iii) disallow the entire amount. As disallowing the entire amount would be unfair and as the law firm's practice of block billing makes it impossible for this Court to determine the exact amount of time the attorneys spent on their various tasks, this Court chooses to reduce Fuller, Fuller & Associates' fees from $250.00 to $150.00 an hour. We also reduce the paralegals' fees from $100.00 to $75.00. These reductions are warranted due to the garden variety nature of this action and its lack of complexity. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (C.A.1974) (holding that "the novelty and difficulty of the questions" involved in the case is a factor in the determination of a reasonable fee); *Pinner v. Mortgage Budget Bankers LTD.*, 336 F. Supp. 2d 217, 219 (E.D.N.Y. 2004) ("Once the initial lodestar calculation is made, the court should then consider whether upward or downward adjustments are warranted by factors such as . . . the degree of risk associated with the claim."); *Webb*, 967 F. Supp. at 323 (holding that the Court may increase or decrease the fee in light of the novelty and difficulty of the question) (N.D. Ill. 1997). We note that while this reduction is made in part due to counsels' duplicitous litigation, the reduced figure is not far

---

[2] It is impossible to determine exactly how much time Fuller, Fuller & Associates spent communicating with Esposito, because of their practice of block billing.

removed from fees found reasonable in this district. *See Murray v. Commissioner of New York Dept. of Ed.*, 354 F. Supp. 2d 231, 236-37 (E.D.N.Y. 2005) (recognizing $175 to $200 per hour as a reasonable fee in the Eastern District for solo practitioners).

Accordingly, this Court finds that Plaintiffs are entitled to an award of $13,622.50 in attorneys' fees.[3] The Report's finding of expert fees and costs is unchanged.

|  | Reasonable Hours Expended | Reasonable Hourly Rate | Total |
|---|---|---|---|
| John Fuller | 6.40 | $150.00 | $     960.00 |
| Lawrence Fuller | 74.10 | $150.00 | $11,115.00 |
| Mario Mikelinich | 9.50 | $140.00 | $  1,330.00 |
| Paralegals | 2.9 | $  75.00 | $     217.50 |
| TOTAL |  |  | $13,622.50 |

---

[3] As this Court has ruled that the attorneys' fees must be reduced, Plaintiff's objection arguing that the fees be increased is of course denied.

## CONCLUSION

For the foregoing reasons, the award of attorneys' fees to the Plaintiffs is hereby reduced to $13,622.50.  The award of expert fees and costs is unchanged.  Accordingly, the Report is **AFFIRMED** in part and **REVERSED** in part.


**SO ORDERED**.

/S/_____
Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
       March 6, 2006